ADAM SCHUMANN ASSOCIATES, Inc., v. CITY OF NEW YORK.

No. 296.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

O. Ellery Edwards, of New York City, for appellant.

Arthur J. W. Hilly, Corp. Counsel, of New York City (J. Joseph Lilly and Charles W. Miller, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

On November 12, 1926, the appellant owned three parcels of real property situated on Eightieth street between Narrows avenue and Colonial road, in the borough of Brooklyn, city of New York. This property was located in blocks 5976 and 5985, on the land map of the county of Kings, and is in drainage district 42 (section 444, Greater N. Y. Charter [Laws 1901, c. 466]) of the same borough. In 1926 and 1927, proceedings instituted by property owners in drainage district 42 were had pursuant to law (sections 437 and 442, Greater N. Y. Charter, as amended by Laws 1917, c. 632, § 2), and a standard type trunk relief sewer known as the Seventy-Eighth Street sewer was constructed. After the final estimate for payment to the contractor who constructed the sewer was made, the board of assessors of the city of New York duly completed their proposed assessment for this local improvement and notified the property owners whose interest may be affected thereby and who may be opposed to the same, to present their objections in writing to the board of assessors within 30 days from the date of the notice. Section 950, Greater N. Y. Charter, as amended by Laws 1918, c. 619, § 3. Objections in writing were filed to the assessment. A time was fixed by the board of assessors for hearing objections to its tentative assessment for the benefit of the property owners situated in the so-called 8-cent zone. Three zones within that area—the 8-cent, 3-cent, and ½-cent—were laid out so that four-fifths of the burden of taxation fell upon the 8-cent zone, and it represented two-fifths of the area. The appellant's land was in the 8-cent zone. Objectors appeared. The hearing, with the exception of a small area at Colonial road where the assessment was reduced, resulted in a confirmation by the board of revision of assessments, which duly transmitted it for entry and collection to the comptroller of the city of New York, when it became a lien (sections 159 and 1017, Greater N. Y. Charter, as amended by Laws 1916, c. 602, § 7), on June 19, 1927. This sewer carries off storm water more promptly

See also 27 F.(2d) 618.

and gives good service, except in extraordinary storms of unusual intensity, and also gives sewerage service to the 8-cent zone.

The assessment entered against the property of the appellant, as alleged in the complaint, was not in excess of $6,900 inclusive of interest and costs, but, in point of fact, it was $5,603.65. On June 19, 1927, the date when the assessments totaling $5,603.65, reduced by payments on July 26, 1927, and August 31, 1927, respectively, to a total of $2,671.88, became liens, and prior to April 18, 1928, the date of the commencement of this suit, the appellant transferred to other persons and corporations, all of its realty within the zone except Nos. 97, 113, and 119 Eightieth street, against which the total of the assessments complained of was $787.60, and at the trial no claim was made that other property comprised in Exhibit 1 was owned by the appellant.

The bill was dismissed below because the jurisdictional amount was not established to be in question and the division and apportionment of the three zones was found not to be arbitrary or in violation of the Fourteenth Amendment of the Constitution. The theory of the suit in the District Court was that—

"This plaintiff has been deprived of its property to an extent greater than $6,900 exclusive of interest and costs, without due process of law and has been denied the equal protection of the laws, contrary to the Fourteenth Amendment to the Constitution of the United States, Section 1, by action of the defendant by its duly authorized and qualified agents and servants, to wit, the Board of Assessors and the Board of Revision of Assessments, acting pursuant to the laws of the State of New York, which assessed four-fifths of the cost of a relief sewer installed in Drainage District 42 of the Borough of Brooklyn, City of New York, upon two-fifths of the area of said district."

■ The fraud relied upon, as well as the arbitrary and intentional action alleged, is in the levy of four-fifths of the cost of the relief sewer upon two-fifths of the area of the land in the drainage district. There was no evidence at the trial, other than the fact that the assessment on the property owned by the plaintiff at the time of the assessment was made at the rate of 8 cents per square foot and that four-fifths of the assessment was levied on this two-fifths of the area. The court below found that it was expected that ultimately all the property within the district would receive full and direct benefit from the relief sewer; that the property owners in the 8-cent zone, as well as in the other zones, petitioned for the relief sewer, and property in that zone had benefited by improved conditions in carrying off storm water; also that the relief sewer was not confined to carrying off storm water, but carried off sewerage, and that the 8-cent zone had a direct and positive benefit from the sewer; that the property formerly owned by the appellant had facilities which made full use of the sewer relief possible as to such property, and that this applied to the entire area assessed. Appellant's contention that the assessment should be laid equally in the whole district is unfair and inequitable because no portion of the relief sewer is laid in the 3-cent or ½-cent zones and the property owners cannot avail themselves of the full use of that sewer without the construction of necessary facilities for that purpose, and therefore the benefit to them is not direct and positive, but largely potential. Nor is there substance in the claim that error was committed in the apportionment of the benefit and that therefore the 8-cent zone should pay less and the 3-cent and ½-cent zones more. Such a division would be inequitable.

■ There is no fraud or substantial error shown, and the actions of the board of assessors and the board of revision of assessment are conclusive in the absence of such proof, and made so by statute. Greater New York City Charter (Laws 1901, c. 466) § 436, as amended by Laws 1920, c. 787, § 1, §§ 942, and 943 as amended by chapter 516, § 1, Laws of 1916, section 944 as amended by chapter 619, § 1, Laws of 1918, sections 945 and 947 as amended by chapter 516, § 2, Laws of 1916, section 949 as amended by chapter 516, § 3, Laws of 1916, section 950 as amended by chapter 619, § 3, Laws of 1918, section 958 as amended by chapter 475, § 1, Laws of 1922, c. 320, § 1, Laws of 1919, and chapter 90, § 1, Laws of 1904, sections 959, 960, 961, 962, 963, and 964 as amended by chapter 490, § 4, Laws of 1908, and section 1017 (as amended by Laws 1916, c. 602, § 7) as amended and superseded by Local Law No. 16 of 1926. Appellant's complaint of the method used by the board of assessors in arriving at the benefit received in the several zones is also without force; that is, estimating the cost of the future construction required in the 3-cent and ½-cent zones, adding to that the cost of construction of the relief sewer, dividing that total by the number of lots 20x100 feet in the district, which amounts to $160 per lot for those who had the relief sewer, and all necessary facilities,

that is, owners in the 8-cent zone, rebating the estimated cost of the required facilities for full beneficial use in the 3-cent and ½-cent zones, respectively, because, as said, it is impossible for any one to tell at the present time what will be the cost of construction of the necessary facilities in the future in the 3-cent and ½-cent zones. Such a complaint, if it had substance, might come from the property owners in the 3-cent and ½-cent zones. The right to assess for potential as well as direct benefit may be sustained. There was no inequality of benefit imposed upon the property owners in the 8-cent zone, and the court had no right to interfere unless it be shown that the action of the assessors was arbitrary or fraudulent. In the absence of such proof, no constitutional right of appellant has been infringed. Mt. St. Mary's Cemetery Ass'n v. Mullins, 248 U. S. 501, 39 S. Ct. 173, 63 L. Ed. 383; Valley Farms Co. v. Westchester County, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Hibben v. Smith, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195.

Authorities cited by the appellant are distinguishable. In Myles Salt Co. Case, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392, an island having the highest elevation in a portion of the state was assessed pursuant to a drainage plan for the purpose of draining flats along the Louisiana coast, and it was found that no benefit in any wise accrued to the complainant; that arbitrary power had been exerted in imposing a burden without compensating advantages of any kind. This was held to amount to confiscation and a violation of the due process provision of the Fourteenth Amendment. In Kansas City Ry. Co. v. Road Improvements District, 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151, a discrimination against the railroad company was established to be so palpable and arbitrary as to amount to the denial of equal protection of the law. In Gast Realty Co. v. Schneider Co., 240 U. S. 55, 36 S. Ct. 254, 60 L. Ed. 523, the differences were not based upon any benefits conferred. The city ordinance, authorized by the charter of the city, levying part of the cost to paving property fronting on the street, was based upon area without providing for equal depth in the assessment district, resulting in subjecting property owners having greater depths to that adjoining them to greater and disproportionate taxation, and it was held to be unconstitutional under the Fourteenth Amendment. The decision was restricted to the particular property owner in the case because it was shown that he had suffered from the inequalities which had no justification in law. In Norwood v. Baker, 172 U. S. 269, 19 S. Ct. 187, 43 L. Ed. 443, the village condemned a strip of land running through the plaintiff's property in order to open a street. The entire cost was assessed against the plaintiff, and it was not denied that the improvement benefited the town generally. This was held to be a violation of the Fourteenth Amendment. In Ogden City v. Armstrong, 168 U. S. 224, 18 S. Ct. 98, 42 L. Ed. 444, there was an actual fraud, a falsification of a jurisdictional record, and the court held that the city was without jurisdiction under the territorial statute to make the assessment in controversy.

Nor was the appellant denied equal protection of the laws. There was an extended hearing before the board of assessors which made the assessment in question. A review thereof, with ample powers in the board of revision and assessment to approve or change, existed under the statute (section 944, N. Y. Charter, as amended by Laws 1918, c. 619, § 1). If dissatisfied with the assessment, the property owner had a right to appeal to the Supreme Court of the state (section 959, Greater N. Y. Charter) for relief. This was due process. Valley Farms Co. v. Westchester County, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; Cleveland, C. C. & St. L. R. Co. v. Porter, 210 U. S. 177, 28 S. Ct. 647, 52 L. Ed. 1012. In Hibben v. Smith, 191 U. S. 310, 24 S. Ct. 88, 90, 48 L. Ed. 195, the court said:

"Due process of law is afforded where there is opportunity to be heard before the body which is to make the assessment, and the legislature of a state may provide that such hearing shall be conclusive so far as the Federal Constitution is concerned."

Moreover, it appears from Exhibit 2 that all the property in the 8-cent zone, which was transferred to the appellant by deed recorded November 12, 1926, was assessed for the relief sewer in controversy in the total sum of $7,799.45; from this amount there should be deducted the assessments, which became liens June 19, 1927, of $1,349.80 against portions of the property described in Exhibit 1 which were owned by others. The assessment at the rate of 8 cents per square foot against the property owned on that day, when such assessments became liens, reduced the amount to $6,052.05. Of this amount the appellant paid $1,876.80 on July 26, 1927, and $1,054.57 on August 13, 1927, thus discharging the lien of the assessment and re-

ducing the assessment liens approximately to $3,120.80, which was further released by payments made by purchasers of the lots to the sum of $2,386.28 when this action was commenced. At that time there were three street numbers to which the appellant claimed title—97, 113, and 119 Eightieth street, assessed for the total principal sum of $787.60, of which the appellant had paid $446.60 on July 26, 1927, leaving an assessment of $320.80 against the premises No. 97 Eightieth street, less an installment payment of $32.08 made January 10, 1928. This was the only alleged cloud upon the appellant's title. Therefore this controversy does not exceed the sum of $3,000. 28 U. S. Code, §80 (28 USCA § 80); North Pac. S. S. Co. v. Soley, 257 U. S. 216, 42 S. Ct. 87, 66 L. Ed. 203; Chick et al. v. New England Tel. & Tel. Co. (D. C.) 36 F.(2d) 832. The amount is the same in equity as in law to confer jurisdiction upon the District Court. Cole v. Norborne Drainage Dist., 270 U. S. 45, 46 S. Ct. 196, 70 L. Ed. 463; Delaware Consol. Oil Co. v. Randall (D. C.) 34 F.(2d) 666. The facts established on the trial presented a different situation than that pleaded in the complaint and upon which the decision of the District Judge was made in Adam Schumann Associates, Inc., v. City of New York (D. C.) 27 F.(2d) 621. This, therefore, was a suit in equity to remove a cloud upon a title, namely, a lien of $320.80 against one lot (lot 66, block 5976) and the purpose to recover whatever amounts had been paid under protest and to remove the assessment on land owned by the appellant, as shown in Exhibit 1. If it had appeared at any time that the suit was commenced as a law action, it should be transferred to the law side of the court. 28 U. S. Code, § 397 (28 USCA § 397); Equity Rule 22 (28 USCA § 723). But such was not the case here. A cause of action for an alleged cloud upon a title was pleaded with a claim for money damages, but upon the trial it was demonstrated that neither an action at law nor in equity was proved. Equity Rule 23 (28 USCA § 723) contemplates only such legal relief as may be proper as an incident to the final determination of a cause in equity. Atlantic Monthly Co. v. Post Pub. Co. (D. C.) 27 F.(2d) 556; American Falls Milling Co. v. Standard B. & D. Co. (C. C. A.) 248 F. 487. Appellant failed to establish either the jurisdictional amount necessary or that it is entitled to injunctive relief.

Decree affirmed.